**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-CV-62700-RUIZ/STRAUSS**

**SARA DANESHPAJOUH,**

      Plaintiff,

v.

**SAGE DENTAL GROUP**
**OF FLORIDA, PLLC,** *et al.*,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**

THIS MATTER came before the Court upon Defendants' Verified Motion for Trial Court and Appellate Attorneys' Fees, and Nontaxable Costs ("Motion") [DE 135]. The Motion has been referred to me to take all necessary and proper action as required by law [DE 137]. I have reviewed the Motion, the briefing thereon [DE 138, 139, 142], and all other pertinent portions of the record.[1] For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **DENIED**.

**BACKGROUND**

Plaintiff, a dentist, commenced this employment discrimination action against her former employer (Defendants) following Defendants' termination of her employment. In her Amended Complaint [DE 24], Plaintiff included the following five counts: (I) pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA"); (II) retaliation under Title VII and the FCRA; (III) interference under the Family and

---

[1] Because neither side requested a hearing, I did not hold a hearing on the Motion. Had either side requested a hearing, I would have held a hearing. Additionally, had I thought that sanctions – either under the Court's inherent powers or 28 U.S.C. § 1927 – *may* be warranted based on the briefing, I would have held an evidentiary hearing. But as discussed below, I find that sanctions are not warranted.

Medical Leave Act ("FMLA"); (IV) retaliation under the FMLA; and (V) retaliation under the Florida Whistleblower Act ("FWA").  This Court granted summary judgment in favor of Defendants on all claims.  *See Daneshpajouh v. Sage Dental Grp. of Fla., PLLC*, No. 19-CIV-62700-RAR, 2021 WL 3674655 (S.D. Fla. Aug. 18, 2021).  Plaintiff appealed this Court's ruling – on all claims other than her FMLA interference claim – but the Eleventh Circuit affirmed.  *See Daneshpajouh v. Sage Dental Grp. of Fla., PLLC*, No. 21-13202, 2023 WL 334574 (11th Cir. Jan. 20, 2023).

Now, Defendants (who clearly prevailed in this case and on appeal) seek an award of attorneys' fees against Plaintiff and her counsel.  First, they contend that they are entitled to sanctions against both Plaintiff and her counsel under the Court's inherent powers.  Second, they contend that they are also entitled to sanctions against Plaintiff's counsel under 28 U.S.C. § 1927.  Third, Defendants contend they are entitled to an award of attorneys' fees and nontaxable costs against Plaintiff under an Employment Agreement with Plaintiff.  Fourth, they contend that they are entitled to an award of fees and costs under section 448.104 of the Florida Statutes against Plaintiff (given that they prevailed on Plaintiff's FWA claim).  Defendants seek both their trial court and appellate fees under the third and fourth grounds (under the Employment Agreement and § 448.104).  However, Defendants' requests for sanctions – under the Court's inherent powers and § 1927 – are limited to their trial court fees.  Because the merits of Plaintiff's claims (and whether Plaintiff and/or her counsel pursued the claims in bad faith) are relevant to Defendants' request for fees and costs (at least to the first, second, and fourth grounds), I briefly discuss this

Court's summary judgment decision (2021 WL 3674655) and the Eleventh Circuit's affirmance thereof (2023 WL 334574).[2]

With respect to Plaintiff's three retaliation claims (Counts II, IV, and V), they all failed because Plaintiff failed to establish a causal connection between Plaintiff's alleged protected activity and her termination.  *See Daneshpajouh*, 2023 WL 334574, at *4; *Daneshpajouh*, 2021 WL 3674655, at *15-16, 18-19.  To establish a prima facie case of retaliation (under any of the three counts), Plaintiff was required to establish that: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse action; and (3) the first two elements were causally connected."  *Daneshpajouh*, 2023 WL 334574, at *4 (citing *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020)).  The alleged protected activities related to Counts II, IV, and V (which differed for each count) occurred between October 23, 2017 and November 7, 2017, and the adverse action – the termination of Plaintiff's employment – occurred on November 9, 2017.  *See id.* at *1-2, 4.  Plaintiff relied on the temporal proximity between her alleged protected activities and her termination to attempt to establish a causal connection, but both this Court and the Eleventh Circuit rejected Plaintiff's argument on the basis that it was undisputed that Defendants had already decided to terminate Plaintiff's employment before Plaintiff engaged in the alleged protected activities that are the subject of Plaintiff's retaliation claims.  *See id.* at *4; *Daneshpajouh*, 2021 WL 3674655, at *15-16, 18-19.  Defendants had in fact made their termination decision by October 17, 2017 (a decision they began contemplating on or before October 3, 2017).  *See Daneshpajouh*, 2021 WL 3674655, at *4, 15-16, 18-19.

---

[2] I do not discuss the merits of Plaintiff's FMLA interference claim because Defendants' bad-faith arguments in the Motion are focused on Plaintiff's other claims.

Turning to Plaintiff's pregnancy discrimination claim, this Court found that no reasonable jury could find Plaintiff's employment was terminated due to her pregnancy. *See id.* at *9-15. In doing so, this Court explained that Plaintiff could not establish her claim by direct evidence or circumstantial evidence (under either the burden-shifting framework of *McDonnell Douglas* or under a convincing mosaic theory). *See id.* On appeal, Plaintiff only pursued her convincing mosaic circumstantial evidence theory. She

> point[ed] to four bits and pieces of evidence she says add up to a convincing mosaic: (1) she was fired within a month of telling her bosses that she was pregnant; (2) nonpregnant employees were treated better than she was; (3) any performance issues happened years earlier; and (4) the company decided to transfer her to the Parkland office.

*Daneshpajouh*, 2023 WL 334574, at *3.[3]

The Eleventh Circuit found that "none of this evidence, alone or together, would allow a jury to infer intentional discrimination." *Id.* First, it rejected Plaintiff's temporal proximity argument, finding that Defendants decided to terminate Plaintiff's employment before learning she was pregnant (which the decisionmakers learned on October 18, 2017). *Id.* Second, the Eleventh Circuit found that Plaintiff had not pointed to any similarly situated employees. *Id.*[4] Third, it found that Plaintiff's supervisors were dissatisfied with her for non-discriminatory reasons,

---

[3] Some background regarding the fourth issue (transfer to the Parkland office), *see Daneshpajouh*, 2021 WL 3674655, at *4-5: As noted above, by October 17, 2017, Defendants made the decision to terminate Plaintiff's employment. Plaintiff's supervisor met with Plaintiff on October 18, 2017 to inform Plaintiff of that decision, but before he could do so, Plaintiff informed him that she was pregnant. Therefore, he held off on communicating the termination decision to Plaintiff. Instead, on November 6, 2017, Defendants informed Plaintiff that she would be transferred to the Parkland office (effectively a demotion given that the Parkland office was much smaller). However, three days later (on November 9, 2017), Defendants proceeded with terminating Plaintiff's employment (instead of transferring her to Parkland).

[4] This Court explained in its summary judgment order that the dentists Plaintiff contended were similarly-situated comparators were not similarly situated in all material respects because they did not have "similar performance issues or documented problems with their interpersonal interactions" (aside from one who was fired). *Daneshpajouh*, 2021 WL 3674655, at *11-12 & n.7.

including that she was abrasive and not a team player, and that her office had the worst patient retention and treatment acceptance rates of Defendants' eleven offices. *Daneshpajouh*, 2023 WL 334574, at *3. Fourth, regarding the issue of transfer to the Parkland office (*see supra* note 3), the Eleventh Circuit explained that the decision to take adverse employment action against Plaintiff was made (for non-discriminatory reasons) before Defendants learned Plaintiff was pregnant, so Defendants could not have intentionally discriminated against her due to her pregnancy. *Daneshpajouh*, 2023 WL 334574, at *4.

## ANALYSIS

### A. SANCTIONS UNDER COURT'S INHERENT POWERS AND 28 U.S.C. § 1927

"A sanctions motion under either a court's inherent powers or § 1927 requires a showing that the party acted in bad faith." *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (citations omitted). "[N]egligent conduct, by itself, does not warrant sanctions under a court's inherent powers or § 1927." *Id.* at 1311 (citations omitted). The difference between the two contexts is that inherent-power sanctions require *subjective* bad faith, whereas § 1927 sanctions require *objective* bad faith. *Id.* at 1310. Nonetheless, "[w]hen considering sanctions under the court's inherent power, the threshold of bad faith conduct 'is at least as high as the threshold of bad faith conduct for sanctions under § 1927.'" *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010) (quoting *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1252 (11th Cir. 2007)); *see also Amlong*, 500 F.3d at 1239 ("[A] district court's authority to issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions order under its inherent powers.").

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). To obtain a sanctions award under

the Court's inherent powers, the movant must provide either (1) direct evidence of subjective bad faith or (2) "evidence of conduct 'so egregious that it could only be committed in bad faith.'" *Hyde*, 962 F.3d at 1310 (citing and quoting *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224-25 (11th Cir. 2017)).  "Evidence of recklessness alone won't suffice." *Id.* (citing *Purchasing Power*, 851 F.3d at 1225).

On the other hand, to satisfy the objective bad-faith standard under § 1927, the movant generally needs to show that an attorney acted "knowingly or recklessly." *Id.* (quoting *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003)); *see also Peer*, 606 F.3d at 1314 ("Bad faith is an objective standard that is satisfied when an attorney knowingly or recklessly pursues a frivolous claim.").  Under § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Thus, the plain language of the statute, which must be strictly construed, contains three requirements: "(1) an attorney must engage in unreasonable and vexatious conduct; (2) such unreasonable and vexatious conduct must multipl[y] the proceedings; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct."  *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010) (citation and internal quotation marks omitted).

"An attorney multiplies the proceedings unreasonably and vexatiously only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Peer*, 606 F.3d at 1314 (citing and quoting *Amlong*, 500 F.3d at 1239) (internal quotation marks omitted).  "The statute imposes a 'high standard' that requires the moving party to show that the other side engaged in behavior that 'grossly deviates from reasonable conduct.'"  *Hyde*, 962 F.3d at 1310 (citing and quoting *Amlong*, 500 F.3d at 1240, 1242).  "[A]lthough the standard is objective, the moving party may

still rely on evidence of subjective bad faith to make this showing . . . because an act done in subjective bad faith is also more likely to be objectively unreasonable." *Id.*

Here, Defendants have failed to prove subjective bad faith on the part of Plaintiff, and they have failed to show that Plaintiff's counsel acted in bad faith (objectively or subjectively). In the Motion, Defendants primarily rely on two pieces of evidence to support their arguments of objective and subjective bad faith.[5] First, they point to pre-litigation text messages between Plaintiff and two colleagues, asserting that the text messages show Plaintiff knew she was not fired due to her pregnancy or because she engaged in any protected activity. Second, Defendants contend that Plaintiff should have stopped pursuing her case when she learned through discovery – and could not offer evidence to dispute – that Defendants decided to terminate Plaintiff's employment before learning Plaintiff was pregnant and before Plaintiff engaged in any alleged protected activity.

It is significant – from both an objective and subjective perspective – that Plaintiff was fired shortly after she informed her boss that she was pregnant and shortly after she engaged in alleged protected activities. A plaintiff can generally establish causation "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *see also Jones v. Gulf*

---

[5] In their Reply, Defendants assert that Plaintiff's response did not address Defendants' request for sanctions under the Court's inherent authority. Therefore, Defendants contend that their request for sanctions on this basis is effectively unopposed. I disagree. While Plaintiff's response did not specifically discuss any law regarding sanctions under the Court's inherent powers or even mention the word "inherent," it did address the substance of Defendants' arguments for sanctions, which relied on the same set of facts in seeking sanctions under both § 1927 and the Court's inherent powers. In other words, Defendants' argument that their request for sanctions under the Court's inherent powers is effectively unopposed is a disingenuous form-over-substance argument. Moreover, in general, "sanctions that are impermissible under § 1927 are also impermissible under a district court's inherent powers." *Amlong*, 500 F.3d at 1252.

*Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017) ("Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" (quoting *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006))).

Here, close temporal proximity existed given that Plaintiff was fired a mere two days after engaging in one form of alleged protected activity, less than three weeks after engaging in the other alleged protected activities, and roughly three weeks after informing her boss that she was pregnant. The problem for Plaintiff's claims was that "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). And Plaintiff did not have evidence to rebut that Defendants planned to fire her before she informed them that she was pregnant and before she engaged in protected activity.

There is no indication, however, that Plaintiff knew at the time she filed this case that Defendants had already planned – prior to learning of Plaintiff's pregnancy and protected activities – on terminating Plaintiff's employment. Thus, putting aside for a moment the issue of the text messages (which are discussed below), the temporal proximity here between Plaintiff's protected activities and termination was enough for Plaintiff and her counsel to allege causation (and discrimination and retaliation) in good faith when the case was filed. Nonetheless, Defendants correctly point out that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Norelus*, 628 F.3d at 1287 (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)). And Defendants posit that by March 2021, after discovery had closed and summary judgment briefing was completed,

Plaintiff and her counsel should have discontinued their quest given that they could not refute Defendants' evidence regarding the timing of Defendants' termination decision.

If temporal proximity was all the evidence that Plaintiff had to support her case, Defendants might have a point.  Still, it was at least subjectively reasonable for Plaintiff to believe that Defendants learned she was pregnant in September given that Plaintiff posted news of her pregnancy on social media (even though such speculation was insufficient to create a factual issue for purposes of summary judgment).  *See Daneshpajouh*, 2021 WL 3674655, at *4 n.3; *cf. Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("[A]lthough Cordoba could ultimately do no more than speculate that Groo was aware of her condition, this speculation was not so unreasonable that it can be termed frivolous.").

At any rate, Plaintiff did not rely on temporal proximity alone.  She had other evidence, albeit weak circumstantial evidence, to support her case.  For instance, she presented evidence that prior to her informing Defendants she was pregnant, the office manager at her location said that Plaintiff "better not get pregnant soon" because "the office needs to keep making money." *Daneshpajouh*, 2021 WL 3674655, at *9.  While this Court found that the officer manager's comments were not direct evidence of discrimination (because the office manager was not a decisionmaker), it at least lends some support to Plaintiff's position that she brought, and continued to pursue, this case in good faith.  Additionally, Plaintiff pointed to evidence regarding a comment made by her supervisor regarding her "condition."  *See id.*  Although this Court rejected Plaintiff's reliance on the comment as direct evidence, it was another small morsel of evidence that, combined with the other weak circumstantial evidence, at least allowed Plaintiff and her counsel to proceed on Plaintiff's claims in good faith.

Moreover, it was objectively reasonable for Plaintiff's attorneys to believe, in good faith, that they could distinguish the case law holding that temporal proximity does not establish causation when the termination decision is made before the protected activity occurs. As noted above, although Defendants produced emails indicating that, by October 17, 2017, they made the decision to terminate Plaintiff's employment, the fact is that on November 6, 2017, they instead chose to transfer Plaintiff to a slower office, which was effectively a demotion, rather than firing her as they originally contemplated. Then, three days later, Defendants proceeded with their decision to fire Plaintiff, after Plaintiff complained about the transfer. While these circumstances were not enough to avoid summary judgment, they did at least provide an objectively reasonable basis upon which counsel could attempt to argue that the termination decision was made in November and upon which counsel could attempt to distinguish the case law on which Defendants relied. Additionally, the circumstances made it subjectively reasonable for Plaintiff and her counsel to believe that Plaintiff was terminated for improper reasons given that the only intervening event (between November 6 and 9) was Plaintiff's complaint regarding her transfer.

In addition to the circumstances discussed above, there is one other major reason, in my view, why Plaintiff should not have had to drop her lawsuit following the close of discovery – a reason that is especially significant in the context of § 1927 sanctions, which requires the multiplication of proceedings. Specifically, the only parties that multiplied any proceedings in this case were Defendants, not Plaintiff.[6] In fact, aside from one routine status conference scheduled by the District Judge, *see* [DE 49], all hearings and status conferences held in this case – which

---

[6] *Cf. Peer*, 606 F.3d at 1314 ("[S]anctions are not appropriate under section 1927 because Rosenbaum did not delay the judicial proceedings after he filed the complaint," "engage in any dilatory tactics," or "multiply any proceeding.").

were before me – concerned difficulty Plaintiff encountered in obtaining discovery from Defendants. *See* [DE 47, 53, 83, 94].

At one of those hearings (on December 16, 2020), Defendants' counsel misrepresented that Defendant did not have certain requested discovery. Although I found that Defendants' counsel did not knowingly make the misrepresentation, it was nonetheless counsel's misrepresentation and Defendants' failure to timely produce discovery that led to the discovery issues – and multiplication of proceedings – facing the parties and the Court (months after the discovery deadline). Additionally, because of Defendants' delay in producing certain discovery – which they inaccurately represented they did not have – I permitted Plaintiff to amend her summary judgment response. *See* [DE 95]. And Plaintiff did so, incorporating certain information she learned from Defendants' late production, and arguing that certain of her metrics were better than alleged comparators. *See generally* [DE 98]. The District Court ultimately rejected Plaintiff's arguments, finding that Defendants asserted they relied on other metrics (in which Plaintiff performed worse) and that Plaintiff failed to show otherwise. *See Daneshpajouh*, 2021 WL 3674655, at *11-12. Nonetheless, Plaintiff and her counsel did not act in bad faith (objectively or subjectively) by pressing forward, particularly after the hurdles they faced in attempting to obtain discovery that Defendants had misrepresented they did not have.

That leaves the pre-litigation text messages – between Plaintiff and her colleagues – on which Defendants rely. Absent such text messages, the conclusion that Plaintiff and her counsel did not act in bad faith (objectively or subjectively) would be inescapable for the reasons discussed above. But the text messages arguably do call into question whether Plaintiff acted in subjective bad faith. In one set of text messages (from December 2017), Plaintiff stated that she discovered why Defendants fired her. [DE 58-12] at 2. She noted that Defendants were paying her

replacement much less and said that Defendants "[c]learly [] wanted me gone[;] they save so much money this way." *Id.* at 3-4.  When Plaintiff's colleague remarked that it was definitely about money, Plaintiff responded that she was still going to sue Defendants "and blame it on the pregnancy," noting that Defendants' timing was "awful." *Id.* at 9-10.  In text messages with another colleague (on the same day), Plaintiff stated that she now knew "this whole thing was about [her] getting paid too much money" and also made the following remarks:

- "Yap [sic] all about the . . . money[.] Not that this will help my case [with] the law suit but at least makes me feel a little better [because] I know now it wasn't ME."
- "I hate hate hate them[.]"
- "Of course they wanted to get me out of Pompano[.] I was costing them way too much[.]"

[DE 58-13] at 2-6.  And in text messages with the same colleague the following month, Plaintiff stated, "I can't wait till I fuck them up in court," that her "lawyer is going to sue the shit out of them," and "[t]ake this to social media and the news to give the company a bad rep . . . They will be destroyed[.] I won't leave this alone[.]" *Id.* at 7-9.

Defendants contend that the foregoing text messages show that Plaintiff knew she was terminated for financial reasons and not due to her pregnancy or for any discriminatory or retaliatory reason.  Defendants further assert that notwithstanding Plaintiff's recognition of same, the text messages reveal that Plaintiff chose to pursue this case out of spite, anger, and greed.  Thus, they argue that Plaintiff acted in subjective bad faith and should be sanctioned.  Regarding Plaintiff's counsel, Defendants posit that counsel acted in subjective bad faith if aware of the text messages before filing the Complaint and Amended Complaint.  To the extent Plaintiff's counsel was not aware of the text messages at that time, Defendants assert that counsel acted in bad faith from an objective standpoint by accepting Plaintiff's word without conducting an adequate pre-suit investigation.

Regarding Plaintiff's counsel, simply because counsel did not review Plaintiff's pre-suit text messages with colleagues does not mean that counsel failed to perform a reasonable pre-suit investigation. Notably, in support of their contention on this point, Defendants rely on a non-binding case that is readily distinguishable. *See* [DE 135] at 7 (citing *Estrada v. FTS USA, LLC*, No. 14-23388-CIV, 2018 WL 1836007, at *5 (S.D. Fla. Jan. 23, 2018), *report and recommendation adopted*, 2018 WL 1811907 (S.D. Fla. Mar. 16, 2018), *aff'd*, 810 F. App'x 743 (11th Cir. 2020)). In *Estrada*, the court found that sanctions were warranted in a case seeking overtime wages under the Fair Labor Standards Act where counsel failed to do even the most basic due diligence; counsel did not even look at the plaintiff's earnings statements, which would have shown that the plaintiff was paid overtime contrary to what he told his counsel. 2018 WL 1836007, at *4-5. Thus, had counsel in *Estrada* done the minimum to vet the plaintiff's claim before filing suit, counsel would have quickly learned that the case was objectively frivolous. *See id.* Not reviewing a plaintiff's text messages before bringing a case does not compare to not reviewing earnings or payroll records before bringing an overtime claim.

Moreover, this case was not objectively frivolous. Significantly, "[a] case may be weak, but as long as it is not 'without circumstantial foundation,' it is not frivolous." *Barnhart v. Lamar Advert. Co.*, 523 F. App'x 635, 638 (11th Cir. 2013) (citing and quoting *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1265 (11th Cir. 2007)). And that is precisely the case here. To be sure, Plaintiff's case was weak, but it was not frivolous or egregious given that it had at least minimal circumstantial foundation – albeit inadequate circumstantial foundation to allow a jury to infer intentional discrimination or retaliation – for the reasons discussed above.[7]

---

[7] The fact that Defendants apparently made a six-figure settlement offer also supports the finding that this case was not frivolous. In fact – although in a different context – the amount of a settlement offer is a relevant consideration in the context of whether a Title VII case is frivolous

Further, unlike *Estrada*, this is not a case that counsel filed just a few months after Plaintiff's employment was terminated.  Rather, Plaintiff went through the EEOC process, and the EEOC ultimately found reasonable cause to believe discrimination occurred.  While Defendants are correct that what was before the EEOC was more limited than what has been presented in this case, it at least lends some support to the contention that this case was not objectively frivolous. Regardless, even without consideration of the EEOC's determination, the case was not frivolous because it had some circumstantial foundation.  And because the case was not frivolous, counsel did not knowingly or recklessly pursue a frivolous case.

As to Plaintiff, however, the text messages arguably do cast some doubt on whether Plaintiff acted in subjective good faith.  But the text messages alone are not enough to find that Plaintiff acted in subjective bad faith in pursuing what was a *non-frivolous* case.  To be sure, Plaintiff acknowledged that she believed money factored into Defendants' decision.  However, she also made clear at her deposition, when discussing the text messages, that she believed discrimination or retaliation to be the *predominant* reason for Defendants' decision to terminate her.  *See* Deposition of Sara Daneshpajouh [DE 58-1] at 222-24.  Moreover, the text messages do not – as Defendants argue – "prove that [Plaintiff] knew she was not terminated because of her pregnancy or for any discriminatory or retaliatory reason."  [DE 135] at 7.  Rather, they reveal speculation regarding Defendants' motives after Plaintiff learned what Defendants were paying Plaintiff's replacement.  And while Plaintiff did send other text messages containing foul language that can be viewed as spiteful, such text messages reflect the kind of acrimony that is not

_____

(such that a prevailing defendant may recover attorneys' fees).  *See Quintana v. Jenne*, 414 F.3d 1306, 1310 (11th Cir. 2005); *Hamilton v. Sheridan Healthcorp, Inc.*, 700 F. App'x 883, 886 (11th Cir. 2017).  At any rate, even without considering the history of any settlement offers, this was not a frivolous case for the reasons discussed in this Report.

uncommon between parties in contentious litigation, and the text messages are not necessarily indicative of a desire to impose damage regardless of the merits of Plaintiff's claims. Ultimately, the text messages on their own are simply not enough to justify an award of sanctions against Plaintiff under the Court's potent inherent powers, especially given that this case was not objectively frivolous.

For the foregoing reasons, Defendants' request for sanctions under § 1927 and/or the Court's inherent powers should be denied.

## B. FEES AND COSTS UNDER THE FWA

This Court should decline to award fees under the FWA. Under the FWA, "[a] court may award reasonable attorney's fees, court costs, and expenses to the prevailing party." § 448.104, Fla. Stat. Such an award is discretionary, not mandatory. *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1259 (11th Cir. 2014); *Barnhart*, 523 F. App'x at 640; *New World Commc'ns of Tampa, Inc. v. Akre*, 866 So. 2d 1231, 1235 (Fla. 2d DCA 2003). "Neither the FWA nor its legislative history indicates what, if anything, should guide a court's discretion in awarding fees." *Smith*, 750 F.3d at 1259. However, district courts in this circuit have considered the following non-exhaustive factors in deciding whether to award fees under the FWA:

> (1) the scope and history of the litigation, including whether the Plaintiff continued to prosecute the action despite the presence of an efficient resolution to the case; (2) the parties' wealth disparity; (3) whether an award of fees would frustrate the FWA's remedial purpose by deterring worthy claimants; (4) whether the opposing party's case was meritorious or frivolous;[8] and (5) whether the opposing party acted in good or bad faith.

---

[8] While this is one of the factors courts have considered, simply because a plaintiff brought a non-frivolous FWA claim does not prevent a prevailing defendant from recovering attorneys' fees under the FWA. *See New World Commc'ns*, 866 So. 2d at 1235 (rejecting the contention that fees should only be awarded to a prevailing defendant under the FWA when a plaintiff's case is "frivolous, unreasonable, or without foundation").

*Blanco v. TransAtlantic Bank*, No. 07-20303-CIV, 2009 WL 2762361, at *2 (S.D. Fla. Aug. 31, 2009) (footnotes omitted); *see also Li v. Roger Holler Chevrolet Co.*, No. 6:19-CV-1249-GAP-EJK, 2021 WL 5769034, at *2 (M.D. Fla. Dec. 6, 2021); *Dawodu v. DHL Express, (USA), Inc.*, No. 18-24587-CIV, 2019 WL 13255530, at *2 (S.D. Fla. June 6, 2019), *report and recommendation adopted*, 2019 WL 13255540 (S.D. Fla. July 1, 2019); *Bourhis v. MY Trade LLC*, No. 15-22674-CIV, 2017 WL 10399269, at *2 (S.D. Fla. Mar. 10, 2017) (collecting cases).  The Eleventh Circuit has not expressly adopted or rejected the foregoing five-factor test, but it has deferred to district courts' use of the test, noting that "[t]rial courts are in a better position than appellate courts to assess whether fees are appropriate in a given case."  *Smith*, 750 F.3d at 1259.

On balance, although Defendants clearly prevailed in this action, consideration of the totality of the circumstances, including the five factors district courts have considered, at least somewhat weighs against an award of fees under the FWA.  Addressing the fourth and fifth factors first, I find that Plaintiff did not act in bad faith and that her case was not frivolous for the reasons discussed in the preceding section.  At the same time, however, Plaintiff's case was weak, and her text messages with colleagues raise some doubt regarding whether she proceeded in good faith at all times.  Therefore, the fourth and fifth factors are somewhere between neutral and slightly in Plaintiff's favor.

As to the second factor – wealth disparity – I find that it is neutral.  Defendants contend that Plaintiff is wealthy based on her husband's deposition testimony that they require at least $1.3 million per year on which to live.  Defendants do not address their own financial circumstances.  Plaintiff responds that Defendant is a multi-million-dollar corporation and that her husband's income is irrelevant because he is not a party, but Plaintiff does not actually address her financial circumstances.  Ultimately, neither side presents a particularly compelling argument – or probative

evidence – that a wealth disparity does or does not exist.  Therefore, this factor does not favor either side.

Turning to the third factor, I find that awarding fees here would at least somewhat frustrate the FWA's remedial purpose by deterring worthy claimants.  What stands out to me in this regard is the basis upon which Plaintiff's FWA retaliation claim failed at summary judgment.  As noted above, it failed based on the Court finding that Defendants' termination decision was made before Plaintiff engaged in protected activity.  But that is not something Plaintiff knew when she filed the case (and is not the type of fact most claimants would know when they commence an action). Therefore, awarding fees against an employee on a basis that is not known when a case is commenced would likely have at least some deterrent effect on worthy claimants.  Nonetheless, I do recognize that Plaintiff brought and continued to pursue a weak (albeit non-frivolous) case, and that her text messages paint her in a bad light.  Therefore, I find that this factor only slightly favors Plaintiff.

Finally, I find that the first factor – the scope and history of the litigation, including whether the Plaintiff continued to prosecute the action despite the presence of an efficient resolution to the case – weighs slightly in Plaintiff's favor on balance.  Defendants again emphasize that Plaintiff continued to pursue her claims even after Defendants provided evidence that they decided to terminate Plaintiff's employment before she engaged in protected activity.  And while that is true, for the reasons discussed in the preceding section, Plaintiff had at least a colorable (but weak) basis upon which to argue that Defendants made their ultimate termination decision in November 2017. As also discussed above, it was not unreasonable for Plaintiff to speculate that Defendants knew she was pregnant prior to October 2017.  Moreover, when considering Defendants' discovery misconduct (and related misrepresentation to the Court) – though not done in bad faith – which

multiplied proceedings, and the fact that Plaintiff did not similarly multiply proceedings, I find that the history of the litigation, and the first factor as a whole, ultimately favor Plaintiff here to at least a small degree.[9]

Because the relevant factors and circumstances are either neutral or slightly favor Plaintiff, I respectfully recommend that the Court exercise its discretion by declining to award attorneys' fees to Defendants under the FWA.

### C.  FEES AND COSTS UNDER THE EMPLOYMENT AGREEMENT

Defendants have failed to establish entitlement to attorneys' fees and costs under the Employment Agreement [DE 135-1].  Of course, it is their burden to do so.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[T]he fee applicant bears the burden of establishing entitlement to an award."); s*ee also ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (same). "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010) (citations and internal quotation marks omitted).  Florida "follows the 'American Rule' that attorney's fees may only be awarded by a court pursuant to an entitling statute or an agreement of the parties."  *Air Turbine Tech., Inc. v. Quarles & Brady, LLC*, 165 So. 3d 816, 821 (Fla. 4th DCA 2015) (quoting *Dade Cnty. v. Peña,* 664 So. 2d 959, 960 (Fla. 1995)); s*ee also Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1335 (11th Cir. 2018) ("Under Florida law, absent a specific statutory or contractual provision, a prevailing litigant has

---

[9] Defendants also briefly contend that Plaintiff made no meaningful effort to resolve the case.  And they note elsewhere that Plaintiff was never willing to resolve the case for less than $300,000. However, the limited information and analysis provided regarding whether an "efficient resolution" was on the table makes it difficult to evaluate whether this component of the first factor favors either side.

no general entitlement to attorney's fees."). Because "[f]ee shifting statutes and contractual provisions are contrary to the 'American Rule,'" they must be strictly construed. *Air Turbine Tech.*, 165 So. 3d at 821; s*ee also Int'l Fid. Ins.*, 906 F.3d at 1335.

Importantly, "Florida requires that agreements providing for the award of attorney's fees be clear and specific." *Vill. 45 Partners, LLC v. Racetrac Petroleum Inc.*, 831 So. 2d 758, 760 (Fla. 4th DCA 2002) (citing *Sholkoff v. Boca Raton Cmty. Hosp., Inc.*, 693 So. 2d 1114 (Fla. 4th DCA 1997)). "Attorney's fees are not necessarily recoverable as to any and all litigation relating to a contract with an attorney's fees clause." *Id.* (citing *Bowman v. Kingsland Dev. Inc.*, 432 So. 2d 660, 664 (Fla. 5th DCA 1983)). "Florida courts have explained that 'if an agreement for one party to pay another party's attorney's fees is to be enforced it must unambiguously state that intention and *clearly identify the matter in which the attorney's fees are recoverable.*'" *Int'l Fid. Ins.*, 906 F.3d at 1336 (quoting *Sholkoff*, 693 So. 2d at 1118) (emphasis added). If ambiguous, "the court will not struggle by construction of the language employed to infer an intent for fees that has not been clearly expressed; nor will it allow intentions to indemnify another's attorney's fees to be ambiguously stated and then resolved by the finder of fact." *Id.* (quoting *Sholkoff*, 693 So. 2d at 1118).

Here, Defendants contend that they are entitled to recover their attorneys' fees and nontaxable costs pursuant to two separate provisions of the Employment Agreement. First, Defendants contend that they are entitled to recover their fees and costs as the prevailing party under Section 15 of the Employment Agreement, which provides, in pertinent part, that "[i]n the event of any legal dispute between the parties, the prevailing party shall be entitled to collect from the non-prevailing party all reasonable attorney, paralegal and expert fees and court costs incurred in litigating such dispute." Second, Defendants contend that Plaintiff is required to indemnify

them for their fees and costs under Section 13 of the Employment Agreement, which provides that

Plaintiff shall indemnify Defendants

> from and against, all claims damages, losses, costs and expenses, including but not limited to, attorneys' fees and expenses, arising from or relating to: . . . (c) any acts or omissions of [Plaintiff] occurring prior to, during, or following the Term of this Agreement; . . . and/or (e) any breach by [Plaintiff] of any covenant, obligation, representation or warranty contained in this Agreement.

Defendants assert that by "bringing false claims against [Defendants] that [Plaintiff] knew to be untrue but pursued out of spite," [DE 135] at 12, Plaintiff violated Section 7(b)(v) of the Employment Agreement, under which Plaintiff agreed not to "slander or make negative statements to any person concerning [Defendants] or [their] employees, dentists, owners or Affiliates." According to Defendants, Plaintiff's violation of Section 7(b)(v) triggered the indemnification provision in Section 13.

As an initial matter, Defendants have failed to meet their burden of demonstrating entitlement.  In the Motion, they devote only a single page to addressing why they are entitled to fees and costs under the Employment Agreement.  They cram both of their arguments for entitlement – based on (1) the prevailing party fee provision in Section 15 and (2) the indemnification provision in Section 13 – into that single page.  And they do so without citing any law to support their Employment Agreement entitlement arguments.[10]

---

[10] Defendants do cite a case in their reply to refute a contract-of-adhesion argument that Plaintiff makes in her response.  While Defendants are correct that Plaintiff's contract-of-adhesion argument is not meritorious here, the fact remains that Defendants have wholly failed to support their contractual entitlement arguments – including their indemnification argument – with any case law, even though they carry the burden to establish entitlement.  If Defendants required more pages to meet their burden, they should have sought leave to exceed the page limit before they filed their Motion (plus, their Motion is more than 2.5 pages under the page limit, so they certainly had room to say more about entitlement under the Employment Agreement).

At any rate, Defendants are not entitled to an award of fees and costs under either provision of the Employment Agreement.  First, while Defendants undoubtedly prevailed on all claims in this case, they are not entitled to attorneys' fees under Section 15 of the Employment Agreement. Again, that provision provides in relevant part that "[i]n the event of any legal dispute between the parties, the prevailing party shall be entitled to collect from the non-prevailing party all reasonable attorney, paralegal and expert fees and court costs incurred in litigating such dispute."  Defendants make the overly simplistic argument that because this case qualifies as "any legal dispute between the parties," and that because they prevailed, they are entitled to fees and costs under Section 15.

But the plain language of the Employment Agreement hardly demonstrates that the parties intended for the prevailing party fee provision to apply to any legal dispute whatsoever between the parties, including legal disputes wholly unrelated to the Employment Agreement or the terms thereof.[11]  Rather, the more reasonable reading of the prevailing party fee provision is that it is intended to apply to legal disputes concerning the terms of the Employment Agreement.  In fact, as Plaintiff contends in her response, Section 15 of the Employment Agreement – entitled "MISCELLANEOUS" – includes various miscellaneous provisions beyond the fee provision (within the same paragraph), and it indicates in various portions that it is addressing litigation pursued in connection with, or the enforcement of, the agreement:

> In the event of any legal dispute between the parties, the prevailing party shall be entitled to collect from the non-prevailing party all reasonable attorney, paralegal and expert fees and court costs incurred in litigating such dispute. This Agreement and all of the terms and conditions hereof shall be construed and interpreted in accordance with the internal laws of the State of Florida without reference to

---

[11] Under Defendants' interpretation, if someone driving a vehicle owned by Defendants crashed into Plaintiff on a non-business day when Plaintiff was nowhere near Defendants' office, and Plaintiff then sued Defendants as a result, the prevailing party fee provision in the Employment Agreement would apply (assuming a party prevailed) because a legal dispute between the parties would exist.  While this is an extreme example, it serves to demonstrate the absurdity of Defendants' interpretation.

Florida's conflicts of laws principles. Dentist specifically agrees that the Fifteenth Judicial Circuit in and for Palm Beach County, Florida has jurisdiction over the *enforcement of this Agreement* and that the Fifteenth Judicial Circuit in and for Palm Beach County, Florida will be the appropriate venue for any action brought *in connection with this Agreement*. . . . Each party hereby waives any right to a trial by jury in the event of any litigation or other proceedings instituted *in connection with* this Agreement.

[DE 135-1] at 10 (emphasis added).

At any rate, as indicated above, a contractual fee provision must clearly and specifically identify the matter in which fees are recoverable. *Int'l Fid. Ins.*, 906 F.3d at 1336; *Vill. 45 Partners*, 831 So. 2d at 760; *Sholkoff*, 693 So. 2d at 1118. Here, the plain language of the fee provision seems to indicate that the provision would at least apply in a lawsuit for breach of the Employment Agreement. *Cf. Effective Teleservs., Inc. v. Smith*, 132 So. 3d 335, 340 (Fla. 4th DCA 2014) ("Fees authorized by contract apply only to claims based on the contract."). But the fee provision in the Employment Agreement provides no indication – certainly not a clear and specific indication – that the parties intended for it to apply in a civil rights lawsuit like this case, where Plaintiff alleged claims under Title VII, the FCRA, the FMLA, and the FWA, but not the Employment Agreement. Moreover, Plaintiff's claims in this case were not based on the Employment Agreement. They were completely independent of that agreement. In other words, adjudicating Plaintiff's claims did not require reference to, or construction of, any terms of the Employment Agreement. Simply stated, no nexus or substantive connection exists between Plaintiff's claims and the Employment Agreement.[12] Rather, the sole *tenuous* connection is that

---

[12] *Cf. Navarro v. Varela*, 345 So. 3d 365, 368 (Fla. 3d DCA 2022) ("A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." (quoting *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013))); *see also Saunders v. St. Cloud 192 Pet Doc Hosp., LLC*, 224 So. 3d 336, 338-39 (Fla. 5th DCA 2017) ("Although the employment agreement created the legal relationship between Pet Doc and Saunders, her claims did not relate directly to the contract itself. . . . Instead, Saunders's complaint addressed Pet Doc's

Plaintiff's claims and the Employment Agreement both relate to her employment with Defendants in a broad and general sense.  However, the fee provision in the Employment Agreement does not clearly and specifically say that it applies to any legal dispute related in any manner whatsoever to Plaintiff's employment with Defendants.  Therefore, concluding that the fee provision applies here would run counter to Florida law.[13]

---

duties under an Osceola County Ordinance (employer sex discrimination) and common law (negligence), not any particular duties created by the contract. Importantly, an employer-employee relationship may exist even without the execution of an employment agreement. Even without entering this agreement, Saunders could have raised the identical claims. . . . Thus, the claims' general relation to her employment does not demand consideration of the underlying employment agreement." (internal citations omitted)).

[13] Even if the fee provision had expressly provided that the prevailing party would be entitled to an award of attorney's fees for the types of claims that were brought in this case, there is another potential problem to which Plaintiff at least alludes.  That is, a court may only award attorney's fees to a defendant that prevailed on a civil rights claim "if the plaintiff's 'claim was frivolous, unreasonable, or groundless,' or if 'the plaintiff continued to litigate after it clearly became so.'" *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 423 (2016) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)).  And Plaintiff implies that an employer and employee cannot contract around this requirement.  *See* [DE 138] at 9.  The Eleventh Circuit, in an unpublished opinion, seems to have rejected this argument in the Title VII context.  *See Hudson v. P.I.P. Inc.*, 793 F. App'x 935, 937-38 (11th Cir. 2019) ("[A] loser's pay provision does not defeat the remedial purpose of Title VII, as a plaintiff, if successful, would still be awarded fees and costs as provided by the statute." (citing 42 U.S.C. § 2000e-5(k)).  But a contractual prevailing party fee provision in the FMLA (or FLSA) context, where the law only permits a plaintiff (and not a defendant) to recover attorney's fees, does defeat the remedial purpose of the FMLA (and FLSA).  *See Champness v. J.D. Byrider Sys., LLC*, No. 1:14-CV-730, 2015 WL 247924, at *7 (S.D. Ohio Jan. 20, 2015) ("[T]he loser-pays provisions . . . are unenforceable as they provide recovery to a successful defendant-employer that was not intended under the FMLA."); *Dreher v. Eskco, Inc.*, No. 3:08-CV-325, 2009 WL 2176060, at *17 (S.D. Ohio July 21, 2009) ("By providing a prevailing [employer] with the right to recover its reasonable attorney fees, costs, and expenses the loser-pay provision extends to [the employer] a right the FMLA does not provide to employers. Congress did not provide FMLA defendants, like [the employer], a similar right to recover such fees and costs. This aspect of paragraph 20 is therefore unenforceable." (internal citations omitted)); *see also Hudson*, 793 F. App'x at 937-38 (discussing related issues in the FLSA context); *Hernandez v. Colonial Grocers, Inc.*, 124 So. 3d 408, 409-10 (Fla. 2d DCA 2013).  Thus, even if Plaintiff's claims in this case would otherwise be within the scope of the fee provision in the Employment Agreement, the provision's applicability to Plaintiff's FMLA claims would render it unenforceable.

Defendants' indemnification argument is even more unavailing.  As noted above, Defendants contend that Plaintiff "breached her representations and covenants" – specifically, to not "slander or make negative statements to any person concerning [Defendants] or [their] employees, dentists, owners or Affiliates" – "by intentionally bringing false claims against [Defendants] that she knew to be untrue but pursued out of spite as evidenced by her above text messages." [DE 135] at 12.  Thus, notwithstanding the qualifications of "untrue" and "spite," Defendants are effectively saying that by merely filing a lawsuit against Defendants that, like any lawsuit, necessarily includes "negative" statements about Defendants, Plaintiff breached the agreement to not slander or make negative statements against Defendants.  Defendants argue, in turn, that this breach triggered the indemnification provision in Section 13 of the Employment Agreement, thus requiring Plaintiff to indemnify Defendants for the attorneys' fees they incurred in this matter.  Accepting Defendants' absurd argument would effectively slam the courthouse doors in the face of a civil rights claimant (regardless of whether or not the claimant had meritorious claims).[14]

Moreover, even if Defendants' argument had any merit, the Employment Agreement does not show that the parties intended for the indemnification provision to apply here.  "[I]ndemnity contracts are subject to the general rules of contractual construction, such that an indemnity contract must be construed based on the intentions of the parties." *Int'l Fid. Ins.*, 906 F.3d at 1336 (citing *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 643 (Fla. 1999)).  As a general matter, a "contract for indemnity is an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of *liability to a third party*." *Id.* (quoting *Radio Station*

---

[14] As an aside, the Employment Agreement was terminated, effective February 7, 2018, so the prohibition on making negative statements does not appear to have been in effect when this case was filed in October 2019.

*WQBA*, 731 So. 2d at 643).  "Likewise, a party to a contract cannot use an indemnity clause to shift attorney fees between the parties unless the language of the clause shows an intent to clearly and unambiguously shift the fees." *Id.* at 1337 (quoting *MVW Mgmt., LLC v. Regalia Beach Devs. LLC*, 230 So. 3d 108, 113 (Fla. 3d DCA 2017)) (internal quotation marks omitted).

Here, Section 13 certainly does not reveal an intent to clearly and unambiguously shift fees in litigation between the parties (regarding any claims, let alone civil rights claims).  In fact, that is the precise purpose of the prevailing party fees clause in Section 15 (even though it does not apply to the claims brought in this case).  Accepting Defendants' indemnification argument "would amount to accepting the incongruous theory that although [a plaintiff] may be successful in [her] litigation, [she] would nevertheless have to satisfy [her] own judgment in addition to paying [Defendants'] costs.  The law will not sanction such an anomaly." *Century Vill., Inc. v. Chatham Condo. Ass'ns.*, 387 So. 2d 523, 524 (Fla. 4th DCA 1980).

For the foregoing reasons, Defendants are not entitled to an award of attorney's fees and non-taxable costs under the Employment Agreement.

## <u>CONCLUSION</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 135] be **DENIED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28

U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

    **DONE AND SUBMITTED** in Fort Lauderdale, Florida this 20th day of June 2023.

Jared M. Strauss
United States Magistrate Judge